FILED
2007 Jan-09  PM 02:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| SUSAN BEHEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-06-S-1635-NW |
| | ) | |
| WELLS FARGO HOME | ) | |
| MORTGAGE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Before the court is defendant's motion for judgment on the pleadings due to the alleged expiration of the governing statute of limitations.[1]  Plaintiff has filed a response in opposition,[2] and defendant has interposed a reply that offers additional grounds for granting the motion.[3]  For the reasons set forth below, the motion will be granted in part, and denied in part.

### PART ONE

### *Standard of Review*

Rule 12(c) of the Federal Rules of Civil Procedure provides, in part, that "[a]fter the pleadings are closed but within such time as not to delay the trial, any

---

[1] Doc. no. 3 (Motion for Judgment on the Pleadings).

[2] Doc. no. 11 (Response in Opposition).

[3] Doc. no. 12 (Reply).

party may move for judgment on the pleadings."[4]  "Judgment on the pleadings is appropriate only when the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002) (quoting *Moore v. Liberty National Life Insurance Co*., 267 F.3d 1209, 1213 (11th Cir. 2001) (internal marks omitted)).  Stated differently, "[j]udgment on the pleadings is proper when no issues of material fact exist, and the movant is entitled to judgment as a matter of law."  *Ortega v. Christian*, 85 F.3d 1521, 1524 (11th Cir. 1996).  One such instance occurs when, as here, the movant asserts that the statute of limitations precludes the claims contained within the complaint.  *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994) (noting that a motion for "judgment on the pleadings under Fed. R. Civ. P. 12(c) is uniquely suited to disposing of a case in which a statute of limitations provides an effective bar against a plaintiff's claim").

When reviewing such a motion, the court is required to accept the facts alleged in the complaint as true, and to view them in the light most favorable to the

---

[4] In full text, the rule reads as follows:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings.  If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(c).

nonmoving party.  *Swerdloff v. Miami National Bank*, 584 F.2d 54, 57 (5th Cir. 1978).[5]

## PART TWO

### *Factual and Procedural Background*

This diversity real estate case arrived here *via* a notice of removal from the Circuit Court of Lauderdale County, Alabama.[6]  *See* 28 U.S.C. §§ 1332(a)(1), 1441(a).  The action was originally filed on December 27, 2005.[7]  In the complaint, plaintiff, Susan D. Behel, alleges that she is the *rightful* (but, for now, not *record*) owner of a parcel of land in Lauderdale County, Alabama.[8]  Defendant, Wells Fargo Home Mortgage, Inc., was the mortgagee of the property when it was in plaintiff's name; now, defendant is the record owner of the tract.[9]  Plaintiff claims that defendant came into ownership of the parcel by filing a mortgage foreclosure deed on November 6, 2001.[10]  According to the complaint, defendant filed the foreclosure paperwork knowing full well that the mortgage, although previously in default, had

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

[6] Doc. no. 1 (Notice of Removal).

[7] *Id*. at p. 1.

[8] *Id*. at p. 108 (State Court Complaint).

[9] *Id*.

[10] *See*, *e.g.*, *id*.  The complaint itself does not include *any* dates, but both parties agree in their briefs that November 6, 2001 is the date of the alleged filing.

-3-

been reinstated, and the indebtedness it had secured paid in full.[11]

Defendant has filed an answer,[12] and also has attacked plaintiff's complaint on the basis of the statute of limitations.[13]   The statute of limitations argument is somewhat hindered, however, by defendant's inability to discern the exact nature of plaintiff's claims.  In its motion for judgment on the pleadings, defendant asserts that "[p]laintiff's sole allegation is that Wells Fargo negligently or wantonly filed a foreclosure deed against her property in the Probate Court of Lauderdale County."[14] Based on that understanding of the complaint, defendant suggests that this motion is easily resolved, because "Alabama has a two year statute of limitation for negligence and wantonness claims."[15]

A perfunctory glance at the *three-count* complaint belies the conclusion that plaintiff asserts only one theory of recovery.  Count I states that defendant acted "negligently or wantonly" in filing the foreclosure deed, injuring plaintiff in the process.[16]   Count II asserts that this same filing "was done recklessly and without information sufficient to support a bona fide belief that [defendant] . . . had

---

[11] *Id*. at pp. 110-111.

[12] Doc. no. 2 (Answer).

[13] *See* doc. no. 3.

[14] *Id*. at p. 3.

[15] *Id*. at p. 1.

[16] Doc. no. 1, p. 108.

paramount title to the [property]."[17]   Although this language appears somewhat repetitive of Count I, in her brief, plaintiff characterizes the claim as one for "outrageous conduct."[18]   Defendant, in turn, interprets "outrageous conduct" to mean the common law tort of "outrage," or intentional infliction of emotional distress.[19] *See generally Stabler v. City of Mobile*, 844 So. 2d 555, 560 (Ala. 2002) (discussing the tort of outrage).  Whatever the theory, plaintiff seeks unspecified damages for the allegations set forth in Counts I and II.[20]

Count III reiterates that the mortgage foreclosure deed "is erroneous and was wrongfully filed," and then requests the court to void the deed and order defendant to re-convey the property to plaintiff.[21]   Defendant asserts that this is nothing more than a prayer for relief that would flow from a favorable verdict on Counts I and II; consequently, defendant suggests that dismissal of those counts on statute of limitations grounds would eliminate Count III as well without further discussion. Plaintiff, on the other hand, maintains that Count III contains an independently cognizable claim "in the nature of recovery of lands."[22]

---

[17] *Id*. at p. 110.

[18] Doc. no. 11, p. 2.

[19] Doc. no. 12, p. 2.

[20] Doc. no. 1, pp. 109, 110.

[21] *Id*. at p. 111.

[22] Doc. no. 11, p. 3.

## PART THREE

*Count I*

Both parties agree that Count I states claims for negligence and/or wantonness arising out of defendant's alleged filing of a mortgage foreclosure deed in November 2001.  It also is undisputed that this lawsuit was filed just over four years later, in December 2005.  Finally, there is no debate over the applicable statute of limitations with respect to Count I:  defendant cites to three opinions of the Supreme Court of Alabama in which the justices held that negligence and wantonness claims arising out of various real estate transactions are governed by the two year statute of limitations located at Alabama Code § 6-2-38(*l*).  *See Gilmore v. M & B Realty Company*, 895 So. 2d 200, 208 (Ala. 2004); *Jim Walter Homes*, *Inc. v. Nicholas*, 843 So. 2d 133, 136 (Ala. 2002); *Sanders v. Peoples Bank & Trust Company*, 817 So. 2d 683, 686 (Ala. 2001).[23]  Evidently, plaintiff has no quarrel with the proposition that § 6-2-38(*l*) controls the result in this case, and does not bother to contest the issue.[24]  Thus, the only issue to be decided is when the statute began to run.

---

[23] Doc. no. 3, pp. 3-4.  Section 6-2-38(*l*) provides that "[a]ll actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."  *Id*.

[24] This is not to imply that there is something to contest.  The Alabama courts have repeatedly held that causes of action for negligence and/or wantonness in the real estate context must be brought within two years of the date of the injury.  *See*, *e.g.*, *Eady v. Crews Mobile Homes*, *Inc.*, No. 2050743, 2006 WL 3377885, at * 4 (Ala. Civ. App. Nov. 22, 2006).

Defendant asserts that the date of the alleged filing of the mortgage deed is the sensible staring point, even though plaintiff allegedly did not become aware of the filing until a later date.[25]  In support of this argument, defendant cites *Gilmore v. M & B Realty Co.*, 895 So. 2d 200 (Ala. 2004), where the court held that "[a] negligence [and/or wantonness] cause of action accrues as soon as the claimant is entitled to maintain an action, regardless of whether the full amount of damages is apparent at the time of the first legal injury." *Id.* at 208.  Plaintiff responds to this argument by citing the Alabama Supreme Court's decision in *Ex parte Floyd*, 796 So. 2d 303 (Ala. 2001), in which the court observed that:

> there are cases where the act complained of does not itself constitute a legal injury at the time, but plaintiff's injury only comes as a result of, and in furtherance and subsequent development of, the act defendant has done.  In such cases, the cause of action "accrues," and the statute of limitation[s] begins to run, "when, and only when, the damages are sustained."

*Id*. at 308 (quoting *Garrett v. Raytheon Co.*, 368 So. 2d 516, 518-519 (Ala. 1979)) (alterations in *Floyd*).  Pivoting off this language, plaintiff suggests that the limitations period specified in § 6-2-38(*l*) was not triggered until 2005, when she allegedly learned of the foreclosure deed for the first time, and, was denied a loan because of that cloud on her title.[26]  The theory is that no *injury* occurred (and thus,

---

[25] *See* doc. no. 11, pp. 3-4.

[26] *Id*.

no cause of action accrued) until that moment.

Resolving these competing arguments requires some rather thin slicing of two critical Alabama cases. *Ex parte Floyd* was a factually complex suit against a notary public. *See* 796 So. 2d at 304-305. In 1997, the notary had endorsed a document purporting to evidence full satisfaction of a mortgage, but in fact containing the forged signature of a person falsely claiming to be the Vice President of Diversified, Inc., the mortgagee. *Id.* at 305. Almost one year passed before Diversified was made aware of the filing through being named a defendant in a lawsuit by another mortgagee, who claimed it had relied on the satisfaction in acquiring its security interest in the same land. *Id.* Once Diversified realized what had happened, but slightly more than two years after the original filing of the satisfaction, it sued the notary for negligence and/or wantonness. *Id.* The notary moved to dismiss the lawsuit on statute of limitations grounds, arguing that the cause of action for negligence and/or wantonness accrued at the time the satisfaction was filed, regardless of the fact that Diversified was not aware of the filing at the time it occurred. *Id.* at 305-306. The Supreme Court held that,

> [i]n the absence of any evidence indicating that Diversified had prior knowledge of a cloud of its title and evidence indicating that it incurred a loss or an expense as a result of having that knowledge, we must conclude that the earliest that the limitations period could have begun to run on Diversified's claim against [the notary] would have been the

time when it incurred actual damage [as a result of defending a lawsuit questioning the validity of its title to the property].

*Id*. at 308.

Not long after it was decided, *Ex parte Floyd* was singled out for distinction in a case that defendant proffers as dispositive of the present dispute.  In *Sanders v. Peoples Bank & Trust Company*, 817 So. 2d 683 (Ala. 2001), the issue was, again, the allegedly wrongful filing of a mortgage satisfaction.  *Id*. at 685.  Sanders sold a piece of property and took a mortgage as security for the promissory note pledged by the buyer.  *Id*. at 684.  Sanders then assigned the mortgage to Peoples Bank as collateral for a loan.  *Id*. at 685.  Years after Sanders repaid the loan, Peoples Bank had still failed to reconvey the mortgage to him.  *Id*.  When the *mortgagor* on Sanders's mortgage requested that Peoples Bank issue and record a satisfaction of the mortgage, Peoples Bank complied without ever clearing that action with Sanders.  *Id*. Indeed, Sanders was not aware of the satisfaction until more than two years after it was filed.  *Id*. at 686.  When Sanders did learn of the satisfaction, he filed suit against Peoples Bank for negligence and/or wantonness; Peoples Bank argued that the two-year statute of limitations for such claims barred the action.  *Id*. at 685-686.  Refusing to credit Sanders's reliance on *Ex parte Floyd*, the Alabama Supreme Court agreed that the lawsuit was untimely:

> This action is different from *Ex parte Floyd*, 796 So. 2d 303 (Ala. 2001).
> Sanders had no title of record.  It is undisputed that Sanders, as
> mortgagee, had assigned the mortgage to Peoples Bank and that the
> assignment had been recorded.  There was no forgery of the instrument
> assigning the mortgage to Peoples Bank.  Peoples Bank, which held title
> to the mortgage, satisfied that mortgage.  If it did so negligently, then its
> negligence occurred when it satisfied the mortgage, and that was more
> than two years before Sanders filed this action.

*Id*. at 686.

Neither *Floyd* nor *Sanders* is *precisely* on point here.  *Sanders*, however, is

awfully close.  Plaintiff's allegation in the present case is that defendant wrongfully

filed a foreclosure deed that undermined her title to property in which she has a

legitimate interest.  This looks almost identical to the claim in *Sanders*:  *i.e.* — that

the defendant wrongfully filed a mortgage satisfaction that undermined the plaintiff's

right to property in which he had a legitimate interest.[27]  On the other hand, the claim

here is considerably dissimilar from the one in *Floyd*, where the defendant wrongfully

*notarized* a satisfaction that *someone else subsequently filed*, the eventual and overall

result of which was to undermine the plaintiff's right to certain property.

The difference is in the nature of injury inflicted:  the wrongful notarization in

*Floyd* was an act (*i.e.*, breach of duty) that merely set the stage for the subsequent

---

[27] It is true that the plaintiff in *Sanders* did not have title of record at the time of the offending filing.  *Sanders*, 817 So. 2d at 686.  Still, Sanders had a very strong *interest* in the property since he had paid off the personal loan for which the mortgage served as collateral, and was entitled to have the mortgage placed back in his name at the time the assignee negligently filed the satisfaction.  *See id.* at 685.

injury. *Floyd*, 796 So. 2d at 308 ("The *act* that ultimately resulted in the alleged legal injury to Diversified was Wilson's notarization") (emphasis in original). The injury came only "as a result of, and in furtherance and subsequent development of, the act defendant has done." *Id.* (internal quotations omitted). It was that essential fact that dictated the result in *Floyd*, for "if the act complained of does not in and of itself constitute a legal injury on the date on which it was performed, the cause of action does not accrue on that date." *Id*. at 307. Conversely, the wrongful filing in *Sanders* was an act that also constituted a legal injury — the recording of the mortgage satisfaction *immediately and directly* divested the plaintiff of any potential interest in, or right to, the mortgaged property.

The same is true of the allegedly wrongful foreclosure deed at issue in the present case. Assuming it was actually filed, as claimed, the legally operative effect would be *instant* extinguishment of plaintiff's property rights. *See*, *e.g.*, *Palmer v. Resolution Trust Co.*, 613 So. 2d 373, 375 (Ala. 1993) (noting that "[the] holder of the foreclosure deed, has full legal title, subject only to the right of redemption, . . . and has a right to immediate possession of the property"). Additionally, it is arguable that a cause of action for slander of title would arise at the moment of the wrongful filing. *See Hosey v. Central Bank of Birmingham*, *Inc.*, 528 So. 2d 843 (Ala. 1988) (holding that an action for slander of title accrues "upon the filing or recording of the

allegedly malicious matter"). Soon after filing, many of the collateral injuries recited in plaintiff's complaint would likely follow, such as damage to her credit record, loss of insurance premiums due to absence of an insurable interest, and the like.[28]

Suffice it to say, defendant's alleged wrongful filing of the mortgage foreclosure deed — without more — was sufficient to give rise to an accrued cause of action for negligence and/or wantonness at the time of the occurrence. *See Sanders*, 817 So. 2d at 686. Since more than two years passed between the time of the filing and the institution of this lawsuit, the claims asserted in Count I are barred by Alabama Code § 6-2-38(*l*). *See Gilmore*, 895 So. 2d at 207 (confirming that § 6-2-38(*l*) "prescribes a two-year statute of limitations for . . . negligence and wantonness claims, measured from the date of injury"). The motion for judgment on the pleadings as to the claims set forth in Count I is, therefore, due to be granted.

## PART FOUR

### *Count II*

Count II of plaintiff's complaint is enigmatic. The count itself is untitled, and the substantive allegations give little clue as to the theory of recovery. After reciting the facts relevant to the alleged filing, and before detailing the claimed damages, plaintiff makes the following quasi-legal accusations:

---

[28] *E.g.*, doc. no. 1, p. 110.

3.      Said filing was done recklessly and without information sufficient to support a bona fide belief that [defendant], rather than Plaintiff, had paramount title to the above described property.

4.      Defendant acted with actual knowledge that the mortgage referred to in the Mortgage Foreclosure Deed had been reinstated by the Plaintiff.

5.      Defendant has failed and refused to re-convey the property unto Plaintiff though requested to do so.[29]

As can be seen from this excerpt, Count II appears to have been written with the goal of producing an extremely malleable cause of action — so malleable, in fact, that it does not even indicate the *legal basis* for the claim.  Without more information, the court would be inclined to order a more definite statement.  *But see Etienne v. Oyake*, 347 F. Supp. 2d 215, 219 (D. Virgin Islands 2004) (noting that the "notice pleading" requirement of Fed. R. Civ. P. 8 "has been construed to require that a plaintiff state only a set of facts giving rise to a claim; he is not required to state the legal theory behind the claim or the statutory basis for such claim. . .").  As observed above, however, plaintiff offers an interpretation in her brief that appears to satisfy both parties.  According to counsel for plaintiff, "Count Two alleges tortious conduct in the nature of outrageous conduct."[30]  Although the language employed in the complaint does not exactly telegraph an outrage claim, the essential allegations

---

[29] Doc. no. 1, p. 110.

[30] Doc. no. 11, p. 2.

-13-

appear to be present, *see generally American Road Service Company v. Inmon*, 394 So. 2d 361, 365 (Ala. 1981), and counsel for defendant is apparently willing to accept this construction and attack the cause of action on the merits.[31]

Defendant takes two swings at the outrage claim. First, it suggests that the claim is time-barred under the same statute of limitations that applies to negligence and wantonness claims. *See Archie v. Enterprise Hospital & Nursing Home*, 508 So. 2d 693, 695 (Ala. 1987) ("[W]e hold that the tort of outrage or intentional infliction of emotional distress is governed by the two-year statute of limitations found in [Alabama Code] § 6-2-38(*l*) . . . ."); *English v. CSA Equipment Co.*, No. 05-312-WS-B, 2006 WL 2456030, at * 19 n.64 (S.D. Ala. Aug. 22, 2006) ("The statute of limitations for the tort of outrage under Alabama law is two years."). The court must credit this much to defendant. Indeed, plaintiff does not appear to contest the applicable limitations period. Plaintiff's response, rather, is that the claim is timely because "in addition to failing to reconvey the property to Behel when she so requested, Wells Fargo has yet to convey the property though the mortgage debt has

---

[31] Doc. no. 12, p. 4 (arguing that "even if these [outrage] claims were asserted by Behel in Count Two, they are also time barred"). It is not the court's responsibility to conjure up potential causes of action based on overly broad language from a complaint, so the court will address Count II as though it does clearly state a claim for outrageous conduct. *Cf. Archie v. Enterprise Hospital & Nursing Home*, 508 So. 2d 693, 696 (Ala. 1987) ("A given set of facts may give rise to more than one cause of action, and if a plaintiff elects to pursue only one such cause of action, the fact that an unpursued cause of action would have supported recovery will not bolster a cause of action which will not support recovery.").

been paid and the mortgage satisfied of record."[32]

Although it is poorly articulated, the court understands this argument to be that the outrage claim is in the nature of a continuing tort.  Plaintiff cites no cases to support such a theory, but it so happens that the court is aware of one.  In *Continental Casualty Insurance Company v. McDonald*, 567 So. 2d 1208 (Ala. 1990), CNA, the insurance carrier handling the plaintiff's claims,

> delayed payments to doctors, hospitals, and pharmacists for unreasonable lengths of time, causing, for example, hospitals to threaten collection actions against [the plaintiff] and a pharmacy to refuse to provide further pain medication.  CNA also resisted paying for a hot tub or whirlpool bath prescribed by [the plaintiff's] doctor, suggesting instead membership in a health spa or other in-home alternatives.  [The plaintiff] argues that CNA intentionally caused him severe emotional distress by these and other actions in its handling of his medical expenses [and argues he is entitled to recovery under an outrage theory].

*Id.* at 1210 (alterations added).  CNA pled the statute of limitations as a defense.  *Id.* at 1215.  The Alabama Supreme Court held that "an action such as this, arising from continuous dealings between the parties, will not be barred until two years after the last tortious act by the defendant, particularly where the defendant's conduct does not cross the threshold and become an actionable tort until it is demonstrably extreme and outrageous."  *Id.* at 1216.  In view of this authority, the court feels comfortable concluding that the outrage claim in Count II is not barred by the statute of

---

[32] Doc. no. 11, p. 7.

limitations.

This finding does not end the inquiry, however.  In the alternative, defendant argues that "Alabama has never recognized wrongful foreclosure has [*sic*] a cognizable claim under the tort of outrage."[33]  In support of this statement, defendant cites *Stabler v. City of Mobile*, 844 So. 2d 555 (Ala. 2002), where it is pointed out that the Alabama Supreme Court "has recognized the tort of outrage in three areas: (1) wrongful conduct within the context of family burials; (2) an insurance agent's coercing an insured into settling an insurance claim; and (3) egregious sexual harassment."  *Id.* at 560.

In relying solely on this one sentence of the opinion in *Stabler*, defendant ignores the fact that it was merely *dictum*.  Immediately after reciting that historical background, the court made clear that it intended to confine the tort *not* to the three circumstances enumerated, but to "egregious circumstances" in general.  *Id.*  Indeed, *Stabler* involved an outrage claim that was predicated entirely upon a letter written by the defendant (plaintiff's supervisor) to the Baldwin County Sheriff's Department, where the plaintiff had applied for a job.  *Id.* at 556.  In the letter, the defendant stated that he felt the plaintiff was unfit for the position for which he was interviewing.  *Id.*

Thus, while the Alabama Supreme Court has not explicitly held that an outrage

---

[33] Doc. no. 12, p. 5.

claim lies in the context of a wrongful foreclosure, it certainly has left open the possibility that a plaintiff could prevail in that situation (and others) if all of the necessary elements are established.  This court merely follows that lead.  Plaintiff's outrage claim will be allowed to go forward; any evidentiary flaws can be taken up on summary judgment.

PART FIVE

*Count III*

Finally, the court must address the viability of Count III.  This will be short and to the point.  Although apparently neither side recognizes it, Alabama Code § 6-6-540 clearly provides the basis for recovery of title to real property where, as here, the person in possession alleges the defendant engaged in a wrongful foreclosure.[34]  *See generally First State Bank of Franklin County v. Ford*, 484 So. 2d 407 (Ala. 1986); *Fleming v. Watson*, 416 So. 2d 706 (Ala. 1982).  It matters little that the statute does

---

[34] In full text, Alabama Code § 6-6-540 provides as follows:

> When any person is in peaceable possession of lands, whether actual or constructive, claiming to own the same, in his own right or as personal representative or guardian, and his title thereto, or any part thereof, is denied or disputed or any other person claims or is reputed to own the same, any part thereof, or any interest therein or to hold any lien or encumbrance thereon and no action is pending to enforce or test the validity of such title, claim, or encumbrance, such person or his personal representative or guardian, so in possession, may commence an action to settle the title to such lands and to clear up all doubts or disputes concerning the same.

-17-

not provide for damages, because plaintiff's prayer for relief simply requests an order setting aside the foreclosure deed and requiring defendant to re-convey the subject property to plaintiff.

There has been no briefing on this issue, but it appears that the statute of limitations is not a problem since, in Alabama, "there is no statute of limitations for quiet title actions." *Williams v. Mertz*, 549 So. 2d 87, 88 (Ala. 1989). And while this federal court is not accustomed to adjudicating such matters, bound up as they are in state property law, there are no obvious jurisdictional or prudential barriers to deciding the case. *See*, *e.g.*, *Privateer Bay Management Corp. v. Heirs of Sewer*, 102 Fed. Appx. 228, 231 (3d Cir. 2004) (holding that "in an action to quiet title, the amount in controversy is the value of the land"); *Maida v. Retirement & Health Services Corp.*, 36 F.3d 1097 (Table), 1994 WL 514521, at * 2 (6th Cir. 1994) (same) (citing 14A Wright & Miller, *Federal Practice & Procedure* § 3702); *see also James Neff Kramper Family Farm Partnership v. IBP*, *Inc.*, 393 F.3d 828, 834 (8th Cir. 2005) ("[O]ur jurisdictional inquiry focuses on the claims made at the time of removal, such that certain subsequent events — for example, the dismissal of one or more claims or parties — do not divest us of jurisdiction."); *Porter v. Commercial Credit Corp.*, 334 F. Supp. 2d 914, 916 (S.D. Miss. 2004) ("The court need not consider whether or not plaintiffs' claims in this case in its current posture satisfy the

minimum amount in controversy for federal diversity jurisdiction, for it is well established that . . . if jurisdiction existed at the time of removal, events that occur subsequent to removal cannot divest the court of jurisdiction.").

Thus, the motion for judgment on the pleadings will be denied insofar as it is directed at Count III, as that count contains a viable claim to quiet title in land.

### Conclusion

In accordance with the foregoing, defendant's motion for judgment on the pleadings is due to be granted as to Count I, but denied as to Counts II and III.  An appropriate order will be entered contemporaneously herewith.

DONE this 9th day of January, 2007.

_____
United States District Judge